**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Willfred Fitzgerald, ) | No. CV 18-524-TUC-LAB |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Commissioner of Social Security ) Administration, ) | |
| Defendant. ) | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). (Doc. 1, p. 2)

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73; (Doc. 27)

The ALJ in this case failed to give specific and legitimate reasons for discounting the opinion of the treating physician. The case is remanded for further proceedings.

PROCEDURAL HISTORY

In May of 2015, Fitzgerald filed applications for disability insurance benefits and for supplemental security income pursuant to Title II and Title XVI of the Social Security Act respectively. (Tr. 18) He alleged disability beginning on June 13, 2014, due to "carpal tunnel both wrist[s], upper body problems, nerve damage, COPD [chronic obstructive pulmonary disease], diabetes." (Tr. 18, 200)

His applications were denied initially and upon reconsideration. (Tr. 119-122, 123-126); (Tr. 131-134, 135-138). Fitzgerald requested review and appeared with counsel at a hearing

before Administrative Law Judge (ALJ) Peter J. Baum on June 28, 2017. (Tr. 36) In his decision, dated September 14, 2017, the ALJ found Fitzgerald was not disabled because there are jobs in the national economy that he can perform considering his age, education, work experience, and residual functional capacity. (Tr. 18-28) Fitzgerald requested review, but on August 23, 2018, the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 2-5) Fitzgerald subsequently filed this action appealing that final decision. (Doc. 1)

Claimant's Work History and Medical History

Fitzgerald was born in October of 1955. (Tr. 195) He was 61 years old when ALJ issued his decision in September of 2017. (Tr. 48) Fitzgerald completed his GED in 1985. (Tr. 201) He was discharged from his last job in June of 2014. (Tr. 200) Apparently, he failed a drug test when he accidentally took a dose of his son's methadone. (Tr. 497) He successfully challenged his termination and received unemployment benefits. *Id*. He worked in the past as a cashier, deli clerk, produce associate, and stocker. (Tr. 201)

At the hearing, Fitzgerald testified that he cannot work because he can no longer perform the required "lifting, bending and [] kneeling" (Tr. 39) He has pain in his neck, arms, shoulder and hips. (Tr. 40) Fitzgerald stated he could lift 15 pounds consistently, stand for ten minutes, and walk one block. (Tr. 40-41)

He spends a normal day watching television and sleeping. (Tr. 42) He can do some cooking and cleaning provided he is allowed to sit and rest. (Tr. 42)

*Mental Impairment*

In August of 2015, Fitzgerald was examined by Michael P. Christiansen, Ph.D., for the disability determination services. (Tr. 496) Christiansen's diagnostic impression was posttraumatic stress disorder and "adjustment disorder with disturbance of mood and conduct." (Tr. 500) He opined that Fitzgerald was "moderately limited" in his ability to complete a normal work schedule without interruptions from his psychological symptoms. (Tr. 501)

1    In August of 2015, Eugene Campbell, Ph.D., reviewed the medical record for the
2 disability determination service and offered an opinion of Fitzgerald's mental impairment. (Tr.
3 64) Campbell diagnosed Fitzgerald with affective disorder. (Tr. 64) He then evaluated
4 Fitzgerald's "B" listing criteria, which gauge the severity of his limitations. *See* 20 C.F.R. §§
5 404.1520a(c)(3), 416.920a(c)(3). Campbell found Fitzgerald has "mild" difficulties in
6 maintaining social functioning; "moderate" difficulties in maintaining concentration,
7 persistence, or pace; and no evidence of decompensation. (Tr. 64) Campbell further opined that
8 the medical evidence did not establish the presence of the "C" criteria, which are an alternative
9 gauge of the extent of his mental impairment. (Tr. 64) Campbell concluded that Fitzgerald's
10 mental impairment is non-severe. (Tr. 64)

11    In December of 2015, Alan Goldberg, Psy. D., reviewed the medical record for the
12 disability determination service and offered an opinion of Fitzgerald's mental impairment. (Tr.
13 96, 101) Goldberg diagnosed Fitzgerald with affective disorder. (Tr. 95) He then evaluated
14 Fitzgerald's "B" listing criteria. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). Goldberg
15 found Fitzgerald has "mild" difficulties in maintaining social functioning; "mild" difficulties
16 in maintaining concentration, persistence, or pace; and no evidence of decompensation. (Tr.
17 95) Goldberg further opined that the medical evidence did not establish the presence of the "C"
18 criteria. (Tr. 95) Goldberg concluded that Fitzgerald's mental impairment is non-severe. (Tr.
19 64)

20    Also in December of 2015, Gabriella Ochoa, M.D., Fitzgerald's treating physician,
21 provided a medical opinion of Fitzgerald's mental impairments. (Tr. 532-534) She diagnosed
22 depression. (Tr. 532) She opined that Fitzgerald's ability to interact appropriately with the
23 general public, carry out detailed instructions, and deal with stress of semiskilled and skilled
24 work was "fair." (Tr. 532-533) Ochoa opined that Fitzgerald would be absent from work more
25 than twice a month due to psychological symptoms. (Tr. 533)

26    In May of 2017, Gabriella Ochoa, M.D., provided a second opinion of Fitzgerald's
27 mental impairments. (Tr. 884-886); (Tr. 605-607) She opined that Fitzgerald is "under
28 tremendous physical and psychological stress" and is "very depressed" and "agitated easily."

(Tr. 886) He has "no useful ability" in maintaining attention for a two-hour segment, maintaining regular attendance, working in coordination with others, completing a normal workday and workweek without interruption from psychological based symptoms, performing at a consistent pace, accepting instructions or responding appropriately to supervisors, getting along with co-workers, responding appropriately to changes in routine, dealing with normal work stress, understanding and remembering detailed instructions, or dealing with the stress of semiskilled and skilled work. (Tr. 885-886) Ochoa opined that Fitzgerald would be absent from work more than twice a month due to psychological symptoms. (Tr. 886)

*Physical Impairment*

In August of 2015, Carol Hutchinson, D.O., reviewed the medical records for the disability determination services. (Tr. 65-68) Hutchinson opined that Fitzgerald can lift or carry 50 pounds occasionally and 25 pounds frequently. (Tr. 65-66) He can stand, walk, or sit for 6 hours in an 8-hour work day. (Tr. 66) He should only occasionally climb ladders, ropes, or scaffolds. (Tr. 66) He is limited in reaching overhead with his right hand. (Tr. 66)

In December of 2015, Charles Fina, M.D., reviewed the medical records for the disability determination services. (Tr. 100) Fina opined that Fitzgerald can lift or carry 50 pounds occasionally and 25 pounds frequently. (Tr. 97) He can stand, walk, or sit for 6 hours in an 8-hour work day. (Tr. 97) He should only occasionally climb ladders, ropes, or scaffolds. (Tr. 98) He is limited in reaching overhead with his right hand. (Tr. 98)

In December of 2015, Gabriella Ochoa, M.D., Fitzgerald's treating physician, provided an opinion of Fitzgerald's physical impairments. (Tr. 529-531) She diagnosed Fitzgerald with diabetes, kidney disease, chronic obstructive pulmonary disease (COPD), major depression, and chronic chest pain. (Tr. 529) She opined that he cannot walk. (Tr. 529) He can sit for 15 minutes or stand for 15 minutes at one time. (Tr. 529) He can occasionally lift 10 pounds. (Tr. 530) He cannot frequently lift any amount of weight. (Tr. 530) He cannot reach overhead with either arm. (Tr. 530)

1    In May of 2017, Gabriella Ochoa, M.D., provided a second opinion of Fitzgerald's physical impairments. (Tr. 887-889); (Tr. 610-612) She diagnosed Fitzgerald with diabetes, cervical radiculopathy, chronic shoulder and leg pain and weakness, and chronic obstructive pulmonary disease (COPD). (Tr. 887) She opined that he can walk less than one city block without rest. (Tr. 887) He can sit for 10 minutes or stand for 5 minutes at one time. (Tr. 887) He can occasionally lift 20 pounds. (Tr. 888) He cannot frequently lift any amount of weight. (Tr. 888) He cannot reach overhead with either arm. (Tr. 888) He can never stoop, crouch, or climb ladders. (Tr. 889)

*Hearing*

Fitzgerald appeared with counsel at a hearing before Administrative Law Judge (ALJ) Peter J. Baum on June 28, 2017. (Tr. 36) Fitzgerald stated that he has been disabled since June 13, 2014. (Tr. 38) That is the last date that he worked. (Tr. 38) He testified that he has not looked for work since. (Tr. 39)

Fitzgerald explained that he cannot do his past work because of "[t]he lifting, bending and the kneeling, I just can't do [them] anymore and being on my feet." (Tr. 39) He has pain in his neck, arms, shoulder, and hips. (Tr. 40) His left hand is in continual pain since his carpal tunnel surgery. (Tr. 40) He still has pain in his lower back in spite of previous back surgery. (Tr. 40) He has neuropathy in his hands and feet and legs. (Tr. 40-41) He testified that he can lift 15 pounds on a consistent basis. (Tr. 40) He can stand for ten minutes before he has to sit down. (Tr. 41) He can walk a block. (Tr.41)

Around the house, Fitzgerald can do some of the cooking and some of the cleaning provided he can sit and rest. (Tr. 42) He thinks his depression affects his ability to cope with work stress. (Tr. 42)

Kathleen McAlpine testified as a vocational expert. (Tr. 44) McAlpine testified that a person who could occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand, walk, or sit for 6 hours in a normal 8-hour day; occasionally climb ladders, ropes, and scaffolds, and who was limited to occasional right overhead reaching could not work in

- 5 -

Fitzgerald's previous job as a stock clerk but could work as a bagger of groceries, DOT 920.687.014. (Tr. 49-51)

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment significantly limits or restricts his or her physical or mental ability to do basic work activities. *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.*

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so limiting as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4),

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

416.920(a)(4). If yes, then the claim is denied. *Id.* If the claimant cannot perform any past relevant work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The ALJ's Findings

At step one of the disability analysis, the ALJ found Fitzgerald "has not engaged in substantial gainful activity since June 13, 2014, the alleged onset date. . . ." (Tr. 21) At step two, he found Fitzgerald "has the following severe impairments: history of right clavicle and scapula fractures, with osteoarthritis of the right shoulder. . . ." (Tr. 21)

At step three, the ALJ found Fitzgerald's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 23)

The ALJ then analyzed Fitzgerald's residual functional capacity (RFC). He found that "the claimant has the residual functional capacity to perform medium work . . . except he can only occasionally reach overhead with the right upper extremity." (Tr. 23)

At step four, the ALJ found Fitzgerald is unable to perform any past relevant work. (Tr. 26) At step five, the ALJ found, based on the testimony of the vocational expert, that, considering his age, education, work experience, and residual functional capacity, Fitzgerald can work as a bagger, DOT 920.687-014. (Tr. 26-27)

STANDARD OF REVIEW

To qualify for disability benefits the claimant must demonstrate, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering

his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

"Where evidence is susceptible to more than one rational interpretation, the [Commissioner's] decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

The Commissioner need not accept the claimant's subjective testimony of disability, but if he decides to reject it, he must justify his decision. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). "[W]ithout affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id*.

Discussion: Treating Physician

The ALJ committed legal error when he improperly discounted the opinion of Fitzgerald's treating physician, Gabriella Ochoa. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The court does not reach Fitzgerald's remaining claims of error.

"Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are [ordinarily] given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). If the treating physician's opinions are uncontradicted, the ALJ may disregard them only

after giving clear and convincing reasons for doing so. *Id*. The ALJ may reject the treating physician's contradicted opinion only if he sets forth "specific and legitimate reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996) (punctuation modified).

In this case, Ochoa's opinion of disability is contradicted by the medical opinions of the examining consultant, Michael Christiansen, and the non-examining state agency physicians, Alan Goldberg and Charles Fina. Accordingly, the ALJ's decision to discount Ochoa's opinion must be supported by "specific and legitimate reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (punctuation modified); *see also Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (applying the "specific and legitimate" test). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "The ALJ must do more than offer his conclusions." *Id*. "He must set forth his own interpretations and explain why they, rather than the doctor['s], are correct." *Id*.

If the treating source's opinion "is well-supported by medically and acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it must be given "controlling weight." 20 C.F.R. § 404.1527(c)(2); § 416.927(c)(2). If the treating source's opinion is not given controlling weight, the ALJ must nevertheless analyze other factors such as the length, nature, and extent of the treating relationship; the supportability and consistency of the opinion; and the degree of medical specialization possessed by the treating source. 20 C.F.R. § 1527(c); § 416.927(c); *see also Sameena, Inc. v. U. S. Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998) ("[A] federal agency is obliged to abide by the regulations it promulgates."). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996). In sum, the ALJ must "give good reasons" for the weight given to the treating source's opinion. 20 C.F.R. § 404.1527(c)(2); § 416.927(c)(2).

- 9 -

In 2017, Fitzgerald's treating physician Ochoa provided a medical opinion of Fitzgerald's mental impairments. She stated that Fitzgerald is "under tremendous physical and psychological stress" and was "very depressed" and "agitated easily." (Tr. 886) She opined that he would be absent from work more than twice a month due to psychological symptoms. (Tr. 886) Ochoa also provided a medical opinion of Fitzgerald's physical impairments. (Tr. 887-889) She diagnosed Fitzgerald with diabetes, cervical radiculopathy, chronic shoulder and leg pain and weakness and chronic obstructive pulmonary disease (COPD). (Tr. 887) She opined that he can walk less than one city block without rest. (Tr. 887) He can sit for 10 minutes or stand for 5 minutes at one time. (Tr. 887) He can occasionally lift 20 pounds. (Tr. 888) He cannot frequently lift any amount of weight. (Tr. 888) He cannot reach overhead with either arm. (Tr. 888) He can never stoop, crouch, or climb ladders. (Tr. 889)

The ALJ rejected Ochoa's opinion and found that Fitzgerald has the physical ability to perform medium work with certain restrictions. (Tr. 23) The ALJ's decision reads in pertinent part as follows:

> I give very little weight to the mental and physical assessments prepared by the claimant's treating physician, Gabrielle Ochoa, M.D., because they are overly restrictive and not supported by her own treatment notes of the claimant. On May 1, 2017, Dr. Ochoa opined that the claimant has limitations in several areas of mental functioning due to severe depression and that he would be absent more than twice a month from work due to his symptoms (Ex. 19F). On May 1, 2017, Dr. Ochoa opined that the claimant is unable to perform even sedentary level work due to his physical impairments and that he would be absent more than twice a month from work due to his symptoms. (Ex. 20F).

(Tr. 25) The ALJ's analysis of Ochoa's opinion[2] is not legally sufficient.

The ALJ did not specify which of Ochoa's assessments are inconsistent with which treatment notes. Instead, the ALJ simply offered a conclusory statement of his opinion. The ALJ, however, "must do more than offer his conclusions." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). He must cite to the record to explain why he believes Ochoa's stated limitations

---

[2] It is not clear whether the ALJ is referring to Ochoa's 2017 assessments alone or to her 2017 assessments *and* her earlier 2015 assessments. The court assumes without deciding that the ALJ believes that both sets of assessments are "overly restrictive and not supported by her own treatment notes of the claimant." (Tr. 25)

- 10 -

are contradicted by her treatment notes. The ALJ "must set forth his own interpretations and explain why they, rather than the doctor['s], are correct." *Id*. This, the ALJ failed to do. *See also Reddick v. Chater*, 157 F.3d 715, 725 n. 7 (9th Cir. 1998) ("In *Embrey* we rejected the ALJ's conclusory statements rejecting the treating doctor's opinion on disability . . . ."). The ALJ's conclusory statements do not support his decision to discount the opinions of the treating physician. *See Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014) ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than . . . criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

The Commissioner argues in his response that substantial evidence elsewhere in the record supports the ALJ's residual functional capacity (RFC) determination. (Doc. 34) He notes that the vocational expert testified that someone with this RFC and Fitzgerald's age, education, and work experience is not disabled.

The Ninth Circuit has stated, however, that when "the ALJ improperly ignore[s] or discount[s] significant and probative evidence in the record favorable to" the claimant, including the opinion of a treating physician, the ALJ makes "an incomplete residual functional capacity (RFC) determination." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012). And, the vocational expert's testimony in reliance on that RFC is not substantial evidence that the claimant is able to work. *Hill,* 698 F.3d at 1162.

Fitzgerald argues that this case should be remanded for further proceedings. (Doc. 29, p. 20); *see also Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) ("When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). He does not suggest that this case must be remanded for payment of benefits. Accordingly,

IT IS ORDERED that the final decision of the Commissioner is reversed. The case is remanded for further proceedings.

The Clerk of the Court is directed to prepare a judgment and close this case.

DATED this 9th day of September, 2019.

_____
Leslie A. Bowman
United States Magistrate Judge